# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## AT PADUCAH

**HELEN REED**
    Plaintiff

**v.**                                                    **No. 5:09CV-00061-J**

**MICHAEL ASTRUE**
    Commissioner of Social Security
    Defendant

## MAGISTRATE JUDGE'S REPORT
## and RECOMMENDATION

This matter is before the court upon the plaintiff's complaint seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The plaintiff is represented by Mark Pierce. The fact and law summaries of the plaintiff and the defendant are at Docket Entry Nos. 12 and 14, respectively. This matter has been referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636.

The final decision of the Commissioner was rendered on November 5, 2007, by administrative law judge (ALJ) Kathleen Thomas. In support of her decision denying Title II and Title XVI benefits, Judge Thomas entered the following numbered findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2. The claimant has not engaged in substantial gainful activity since January 15, 2005, the alleged onset date (20 CFR 404.1520(b), 404.1571 et seq., 416.920(b) and 416.971 et seq.).

3. The claimant has the following medically determinable impairments: apparent degenerative disc disease, early arthritic changes of the right knee and morbid obesity (20 CFR 404.1520(c) and 416.920(c)). The claimant's history of low vision due to cataracts, status-post corrective surgery, caused some limitations early on (prior to surgery), but currently causes no significant visual limitations.

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform a reduced range of medium work activity.  The claimant can lift and carry a maximum of 50 pounds occasionally and 25 pounds frequently.  She can stand and walk a combined total of less than two hours per day, due to the need to use a walker, secondary to morbid obesity.  She can occasionally climb ramps and stairs, but cannot climb ladders, ropes, scaffolds or work at unprotected heights.  She can occasionally stoop, but cannot kneel, crouch or crawl.  Early on, both near and far visual acuity were limited by advanced cataracts such that she could not perform jobs requiring fine visual acuity or work in hazardous conditions.  As of June 2, 2006, status-post cataract surgery, her vision improved significantly.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on March 19, 1962, and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

1.  The claimant has not been under a disability, as defined in the Social Security Act, from January 15, 2005, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Administrative Record (AR), pp. 13-23).

## Governing Legal Standards

1.  The court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or reversing that decision.  42 U.S.C. § 405(g), sentence four.  In exercising its "sentence four"

jurisdiction, the court is limited to determining whether the Commissioner's controlling findings are supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching his decision.  *Richardson v. Perales*, 402 U.S. 389 (1971).  Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to  support  a  conclusion. *Kirk v. Secretary*,  667  F.2d  524 (6th Cir., 1981).  It has been described as a sufficient amount of evidence "to justify, if the trial were to a jury, a refusal to direct a  verdict."  *Sias v. Secretary*, 861 F.2d 475, 480 n. 1 (6th Cir., 1988).  In determining whether the Commissioner's findings are supported by substantial evidence, the court must examine the evidence in the record taken as a whole and must take into account  whatever  in  the record fairly detracts from its weight. *Wyatt v. Secretary*, 974 F.2d 680 (6th Cir., 1992).  However:

> The substantial-evidence standard allows considerable latitude to administration decision makers.  It presupposes that there is a zone of choice within which the decision makers can go either way, without interferences by the courts.  An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Secretary*, 800 F.2d 535, 545 (6th Cir., 1986).

When conducting substantial evidence review, the court is restricted to a consideration of the evidence  that   was before the Commissioner on the date of the final decision.  When  the Appeals Council declines to review the ALJ's decision and render a new decision, the  ALJ's decision becomes the Commissioner's final decision.  *Cotton  v.  Secretary*, 2  F.3d  692 (6th Cir., 1993).

2.   To be entitled to disability insurance benefits (DIB), a claimant must be under the age of 65 years, must meet the insured status requirements of Title II of the Social Security Act, and

must be under a disability as defined by the Act.  To qualify for supplemental security income (SSI) benefits, a claimant  must  file a Title XVI application, must have insufficient earnings and other financial resources, and must be under a disability as defined by the Act.     The  determination of disability is essentially the same for Title II and Title XVI purposes.

3.  Disability determination is a five-step sequential evaluation process, to-wit:

**STEP #1** The claimant must not be engaged in substantial gainful activity.

**STEP #2** The alleged disabling impairment must be "severe."  A "severe" impairment is one that "significantly limits" a claimant's ability to do "basic work activities" that  are "necessary to do most jobs" such as walking, standing, sitting, lifting, seeing, hearing, and speaking. 20 C.F.R. §§ 404.1521 and 416.921. Only a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's  ability  to work, irrespective of age, education and work  experience"  is "nonsevere." *Farris v. Secretary*, 773 F.2d 85, 89-90 (6th Cir., 1985).  Any physical or mental impairment that has more than a de minimis, or significant, effect on the claimant's ability to work is "severe," and the sequential evaluation should proceed to Step #3.   In addition,  the  "severe"  impairment  must  satisfy  the so-called duration requirement, to-wit, the impairment must be expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R.  §§ 404.1509 and 416.909.

**STEP #3** If the claimant has a medical condition that meets or exceeds the criteria for an impairment defined in Appendix 1 of 20 C.F.R. Part 404, Subpart P of the regulations ("the Listing"), a conclusive presumption attaches that the claimant is disabled.

4

**STEP #4** The claimant must not be able to perform his past relevant work either as he actually performed it or as it generally performed in the national economy.

**STEP #5** If the claimant makes a <u>prima facie</u> showing that he cannot perform his past relevant work, the burden of going forward with evidence shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform. *Born v. Secretary*, 923 F.2d 1168 (6th Cir., 1990). The focus of judicial review in Step #5 cases is typically whether the controlling hypothetical posed to the vocational expert reflected all vocationally significant physical and mental limitations actually suffered by the claimant. *Varley v. Secretary*, 820 F.2d 777 (6th Cir., 1987).

**The vocational evidence**

The administrative hearing was held in this case on November 16, 2006. At the conclusion of the hearing, the ALJ held the record open for the purpose of obtaining a consultative physical examination (AR, p. 41). Accordingly, on or about January 6, 2007, the plaintiff was examined at the request of the Commissioner by Mark Esterle, M.D. Dr. Esterle's narrative report is at AR, pp. 305-308, and his completion of the standard physical assessment form is at AR, pp. 309-312. Thereafter, the ALJ presented a hypothetical question to a vocational expert (VE), Lowell Latto, by way of a written interrogatory. The ALJ asked the VE to assume an individual with the limitations opined by Dr. Esterle plus additional restrictions consisting of lifting/carrying no more than 50 pounds occasionally and 25 pounds frequently and an inability to perform work requiring fine visual acuity or work in hazardous conditions (AR, p. 166). These limitations correspond with the ALJ's residual functional capacity (RFC) Finding No. 5. The magistrate judge observes that these limitations are somewhat unique limitations because, while the lifting restrictions fall within the parameters of "medium" work, an inability to stand/walk for more than two hours per

5

workday is characteristic of "sedentary" work.  See definitions of "medium," "light," and "sedentary" work at 20 C.F.R.  §§ 404.1567 and 416.967 and Social Security Ruling (SSR) ("medium" and "light" work generally require "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday").

On March 28, 2007, the VE responded, stating that the individual would be unable to perform the plaintiff's past relevant work (AR, pp. 166).  However, she would be able to perform a significant number of other jobs in the national economy, such as "sedentary" assembler and cashier.  Unless the plaintiff points the court to evidence in the administrative record, which the ALJ was required to accept, that she suffers from a vocationally-significant impairment not contemplated by the post-hearing hypothetical, the court should affirm the ALJ's decision upon the strength of the VE's response.  See Varley v. Secretary, 820 F.2d 777 (6th Cir., 1987).  The plaintiff has failed to identify any such evidence.  Therefore, we shall recommend an affirmance of the Commissioner's final decision.  We shall consider the plaintiff's specific contentions in turn.

On or about April 13, 2007, following the VE's response and identification of jobs, counsel submitted to the ALJ his comments and request to submit additional written vocational questions (AR, pp. 168-183).  On or about June 19, 2007, in light of these comments, the VE conceded that, as defined in the Dictionary of Occupational Titles (DOT), the jobs of assembler and cashier, which he had previously identified as "sedentary," are, in fact, "medium" to "light" (AR, p. 316).  The VE offered the jobs of cashier II, check cashier, cashier (tube room), and ticket seller as appropriate "sedentary" jobs in response to the original hypothetical.  On July 9, 2007, counsel submitted additional comments and request to submit questions (AR, pp. 184-199).  Counsel pointed out that the job of cashier II is defined as "light," not "sedentary," in the DOT (AR, p. 190).  However,

6

counsel apparently conceded that the other jobs are properly classified as "sedentary" (AR, p. 190). Counsel submitted sixteen hypothetical questions that contemplated the limitations of the original hypothetical plus various additional limitations (AR, pp. 191-198).  The ALJ apparently did not forward the additional hypotheticals to the VE for consideration because she found that "substantial evidence [does not exist] to support the limitations contained in those hypotheticals" (AR, p. 23).  Alternatively, the ALJ gave the plaintiff the benefit of the doubt as to the hypotheticals and assumed for the sake of argument that, if accepted, any one of them would dictate an ultimate finding of disability (AR, p. 23).

The plaintiff's primary contention upon judicial review is that the ALJ's refusal to allow the sixteen hypothetical questions that contemplated restrictions in excess of the ALJ's RFC Finding No. 5 constituted a Due Process violation.  The magistrate judge concludes that, to the extent the ALJ's RFC finding is supported by substantial evidence, the argument is unpersuasive.  See *Casey v. Secretary*, 987 F.2d 1230, 1235 (6th Cir., 1993) (in fashioning hypothetical questions to be posed to the VE, the ALJ "is required to incorporate only those limitations accepted as credible").

Next, the plaintiff also argues that the ALJ's treatment of counsel in relation to counsel's attempts to cross-examine the VE after the hearing did not comport with the requirements of section 1-2-5-58 of the Hearing, Appeals and Litigation Law Manual (HALLEX).  The plaintiff's argument is conclusory and does not support a conclusion that counsel had a "right" to propound hypotheticals to the VE that were premised upon limitations in excess of those accepted by the ALJ. To the extent there was a "technical" violation of the terms of the HALLEX, it is "not binding on this court" upon judicial review.  *Bowie v. Commissioner*, 539 F.3d 395 (6th Cir., 2008).

7

Next, the plaintiff argues that there is no substantial evidence in support of a conclusion that the jobs identified by the ALJ exist in significant numbers in the national economy. The argument is unpersuasive for two reasons. First, there is no serious reason to doubt that, considered together, the jobs of "sedentary" check cashier (DOT 211.462-026), cashier (tube room) (DOT 211.482-010), and ticket seller (DOT 211.467-030) constitute a significant number of jobs in the national economy. On the contrary, "the job of check cashier (DOT 211.462-026) [considered alone has been found to be] present in significant numbers in the national economy." *Morillas v. Astrue*, 2008 WL 4298222 (N.D.Cal.). Second, while the VE admitted that he had erred with respect to the label of "sedentary" or "light" to be placed upon a particular job title, the VE did not recant his original statement that there are 664,899 cashier positions in the national economy that are compatible with the limitations stated in the ALJ's hypothetical based upon a "lump[ing] [of] these discreet job titles together when reporting jobs existing in the national economy" (AR, pp. 166 and 316).

### Other contentions

On November 9, 2006, the plaintiff's treating physician, Karin Barnes, completed the physical assessment form (AR, pp. 287-289). The plaintiff argues that the ALJ was required to give controlling weight to Dr. Barnes' medical opinions. A treating source's medical opinion is entitled to controlling weight if it satisfies a two-pronged test, to-wit, it must be "[1] well-supported by medically acceptable clinical and laboratory diagnostic techniques and [2] is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). The ALJ declined to give controlling weight to Dr. Barnes' assessment for the following reasons (AR, p. 20):

8

> Dr. Barnes' opinion is not supported by objective medical findings, her office and treatment notes, history of prescribed treatment or what is medically reasonable while considering the claimant's impairments. The majority of the claimant's complaints are subjective and readily amenable to prescribed treatment, including her history of cataract surgery, which no longer significantly interferes with her vision, as well as difficulty ambulating, related to obesity, and shortness of breath, related to chronic cigarette smoking. Although Dr. Barnes indicates the knee (and back) condition causes limitations, she referred the claimant to Dr. Rommelman, a specialist, for treatment of the knees, who stated there were no clinical or objective medical findings to account for her complaints. Knee x-rays show only mild degenerative changes. Dr. Barnes opines the claimant's ability to use her hands/arms is limited due to tendonitis, but there is only one documented complaint of brief problems, considered likely caused by tendonitis. Her edema is well attended with Lasix. During periods of edema swelling, Dr. Barnes advised her to elevate her feet as much as possible, but she does not have unresolved lower extremity edema to the extent she must elevate her feet on a daily basis. Once starting Lasix, her edema has come under very good control. Dr. Barnes states the claimant can "never stoop," but she demonstrated she was able to stoop, without difficulty, at the consultative examination. For all these reasons, Dr. Barnes' assessment is not afforded "controlling weight" and is not persuasive.

The magistrate judge concludes that the ALJ identified a substantial basis for declining to give controlling weight to Dr. Barnes' opinion.

Finally, the plaintiff argues that the ALJ's identification of "severe," or vocationally significant, medically-determinable impairments in Finding No. 3 is incomplete and inadequate because it fails to acknowledge that she also suffers from carpal tunnel syndrome, tendonitis, chronic abdominal pain and nausea due to scar tissue, ovarian or pelvic cyst problems, and pulmonary and circulatory problems. In the body of her decision, the ALJ explicitly found these impairments to be non-severe, to-wit (AR, pp. 16-17):

1. "[T]he evidence does not support the existence of a medically determinable impairment affecting the claimant's wrists/hands (i.e., positive x-rays, EMG & nerve conduction studies, etc.)."

2. "There is no evidence she has tendonitis at a level of severity or frequency to interfere with work activity."

9

3. "The claimant's abdominal allegations, to the extent she alleges, are found to be out-of-proportion to objective medical findings and her history of prescribed treatment."

4. "The evidence does not establish the existence of a severe pulmonary impairment (i.e., asthma)."

A "severe" impairment is one that "significantly limits" a claimant's ability to do "basic work activities" that are "necessary to do most jobs" such as walking, standing, sitting, lifting, seeing, hearing, and speaking. 20 C.F.R. §§ 404.1521 and 416.921. The claimant has the burden of proving that an impairment is "severe." In addition, the claimant must show that the "severe" impairment satisfies the so-called duration requirement, to-wit, the impairment must be expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509 and 416.909. The magistrate judge concludes that the plaintiff has failed to show that the additional impairments not mentioned in Finding No. 3, either singly or in combination, constitute a medically-determinable "severe" impairment satisfying the duration requirement.

## RECOMMENDATION

The magistrate judge RECOMMENDS that the final decision of the Commissioner be AFFIRMED and that the plaintiff's complaint be DISMISSED.

**NOTICE**

Pursuant to 28 U.S.C. § 636(b)(1), any party shall have a period of ten (10) days, excluding intervening Saturdays, Sundays, and/or legal holidays pursuant to Fed.R.Civ.P. 6(a), from the date of notice of electronic filing within which to file written objections to the foregoing report with the Clerk of the Court. Further and pursuant to Fed.R.Civ.P. 72(b), any party may file a response to objections filed by another party within ten (10) days, excluding Saturdays, Sundays, and/or intervening legal holidays, after being served with a copy of said objections. A period of three days shall be added to each ten (10) day period above pursuant to Fed.R.Civ.P. 6(e).

The court shall not conduct a <u>de novo</u> review of objections that are general, conclusory, or merely adopt previous pleadings. The original objections shall be sent to the Clerk of Court either electronically or by mail. A copy of any objections and response thereto shall be served on the undersigned at Suite 330, 501 Broadway, Paducah, Kentucky, 42001 or via e-mail to w_david_king@kywd.uscourts.gov. Failure of a party to file timely objections shall constitute a waiver of the right to appeal by that party. *Thomas v. Arn*, 474 U.S. 140 (1985).

11